IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEVEN W. BERNSTEIN, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., et al., <br><br> Defendants. | CIVIL ACTION FILE NO. <br><br> 1:15-CV-2520-RWS-CMS |

## **FINAL REPORT AND RECOMMENDATION**

This case presently is before the Court on Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, and Federal Home Loan Mortgage Corporation's ("Defendants") Motion to Dismiss the Amended Complaint for Failure to State a Claim. (Doc. 24). For the reasons stated below, I **RECOMMEND** that the Motion to Dismiss be **GRANTED**.

## **I.  BACKGROUND**

Plaintiff Steven W. Bernstein ("Plaintiff"), proceeding pro se, filed this action on July 15, 2015, seeking monetary damages and an injunction to stop foreclosure proceedings at the property located at 1428 Valley View Rd., Dunwoody, Georgia 30338 ("the Property"). (Doc. 1, Compl.). He also filed a motion for a Temporary Restraining Order ("TRO"). (Doc. 2). Plaintiff named

four entities as defendants: Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage (collectively "Wells Fargo")[1]; Federal Home Loan Mortgage Corporation ("Freddie Mac"); and McCalla Raymer, LLC, alleged to be "the law firm scheduled to handle the foreclosure sale on Aug. 4, 2015." (Compl. ¶¶ 3, 4, 5). Plaintiff raised seven counts in the Complaint: Violation of 12 C.F.R. § 1-24.41, Regulation X of the Real Estate Settlement Procedures Act ("RESPA") (Count 1); Injunctive Relief (Count 2); Equitable Accounting (Count 3); Wrongful Attempted Sale under Power (Count 4); Negligence (Count 5); Specific Performance (Count 6); and Violation of the Rights of the Elderly (Count 7).

On July 31, 2015, District Judge Richard W. Story held a hearing on the motion for TRO. (Doc. 8). At the hearing, the parties presented argument regarding standing and the validity of Plaintiff's offer to tender. Following the hearing, Judge Story issued an Order enjoining Wells Fargo from selling the Property, concluding that Plaintiff had shown a substantial likelihood of success on the merits of his rescission claim. (Doc. 9). Thereafter, Plaintiff sought leave to amend his complaint, which Judge Story granted, except with respect to Defendant McCalla Raymer, LLC; Judge Story concluded that all the proposed claims against

---

[1] Plaintiff alleges on the first page of his Verified Petition and in Paragraph 21 that Wells Fargo Bank, N.A. is the loan servicer. He later alleges in Paragraphs 7 and 65 that Wells Fargo Home Mortgage is the loan servicer.

McCalla Raymer, LLC failed as a matter of law, making amendment futile. (Doc. 22).

The Amended Complaint raises four counts: Declaratory Judgment (Count 1); Violation of 12 C.F.R. § 1024.41, Regulation X of RESPA (Count 2); Violation of 15 U.S.C. 1635(b), Truth in Lending Act ("TILA") (Count 3); and Equitable Accounting (Count 4). (Doc. 23, "Am. Compl."). The remaining defendants, Wells Fargo and Freddie Mac, have now moved to dismiss all counts in the Amended Complaint. (Doc. 24). Plaintiff filed a response in opposition (Doc. 27), and Defendants have replied (Doc. 28).

## II. FACTS

The following fact statement is taken from the allegations in Plaintiff's Amended Complaint and the exhibits attached thereto, as well as certain documents attached to the motion to dismiss.[2] The facts, as alleged, are accepted

---

[2] The undersigned has considered the underlying loan documents and title transfer documents attached to Defendants' motion to dismiss without converting the motion into one for summary judgment because these documents are central to Plaintiff's claims, and the authenticity of the documents has not been challenged. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997). Furthermore, the Court can take judicial notice of the loan documents and title transfer documents to the extent they are publicly recorded property records.

as true for the purposes of this motion to dismiss. See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

Plaintiff alleges that he has resided at the Property for more than 21 years. (Am. Compl. ¶ 8). Plaintiff alleges that on November 2, 2007, he "refinanced the mortgage on the Property" and executed a promissory note (the "Note") from Terrace Mortgage Company ("Terrace") in the principal amount of Four Hundred Thousand Dollars ($400,000) (the "Loan"). (Am. Compl. ¶ 9; see Doc. 24-3). Plaintiff also executed a Security Deed (the "Security Deed") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as grantee and nominee for Terrace. (Doc. 24-3). The Security Deed was recorded at Deed Book 20463, Page 286, DeKalb County, Georgia Records on November 27, 2007. (Id.).

The Property has been in Plaintiff's name since October 15, 2007, when he acquired an interest in the Property through a Quitclaim Deed (the "Quitclaim Deed") from "The 1428 Valley View Road, Bernstein Trust." (Doc. 24-2). The Quitclaim Deed was recorded on November 27, 2007, the same day the Security Deed was recorded. (Id.). On or about August 31, 2012, MERS assigned the Security Deed to Wells Fargo. (Doc. 24-4). The Assignment is recorded at Deed Book 23244, Page 197 DeKalb County, Georgia Records. (Id.). Plaintiff alleges,

upon information and belief, that Freddie Mac is the owner and holder of the Note and Security Deed. (Am. Compl. ¶ 11).

Plaintiff alleges that on February 22, 2010, he sent Wells Fargo a Notice to Rescind Loan Transaction ("Notice"), which he made pursuant to the three-year right to cancel provision of 5 U.S.C. § 1635(f). (Am. Compl. ¶ 13). In the Notice, Plaintiff stated that he was entitled to rescind because he was not given adequate disclosures or timely disclosure of his right to cancel and because the annual percentage rate ("APR") and finance charges exceeded the acceptable tolerances allowed under TILA. (Id. ¶ 14). According to Plaintiff, once he rescinded, the security interest or lien became automatically void, by operation of law, and the Note was voided. (Id. ¶ 15). According to Plaintiff, Wells Fargo did not respond to the Notice and failed to take steps required by 15 U.S.C. § 1635(b). (Am. Compl. ¶¶ 17, 20). Plaintiff alleges that he was "ready, willing, and able" to make the proper tender and that Wells Fargo failed to accept tender of the amount due to them. (Id. ¶¶ 21, 22).

On January 18, 2013, Plaintiff, through counsel, filed a civil action in DeKalb County Superior Court (the "Superior Court") against Wells Fargo and other parties relating to the Property. (Doc. 24-11). Plaintiff asserted numerous causes of action relating to the assignment of the Security Deed and Wells Fargo's

right to conduct a nonjudicial foreclosure sale of the Property. (Id.). On May 9, 2013, the Superior Court entered an Order dismissing all of Plaintiff's claims. (Doc. 24-12). The Superior Court found that Plaintiff lacked standing to challenge the validity of an assignment of the Security Deed, that Wells Fargo is entitled to foreclose on the Property because of Plaintiff's default on the Loan, and that Wells Fargo and the other Defendants were under no obligation to negotiate with Plaintiff following his default. (Id.).

On June 19, 2015, Plaintiff received a Notice of Foreclosure Sale, with a sale date of August 4, 2015. (Am. Compl. ¶ 26). Thereafter, Plaintiff submitted a "complete loss mitigation application" in an effort to mitigate his damages, but Wells Fargo failed to respond. (Id. ¶¶ 27, 30). Plaintiff then filed this civil action on July 15, 2015.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570)). In considering a motion to dismiss, the court must eliminate any allegations in the complaint that are merely legal conclusions, and then, where there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

Although reasonable inferences are made in a plaintiff's favor in considering a motion to dismiss, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). In addition, courts may infer from the factual allegations in the complaint "obvious alternative explanations" that suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. Twombly, 550 U.S. at 567.

## IV. ANALYSIS

The Amended Complaint raises four counts: Declaratory Judgment (Count 1); violation of 12 C.F.R. § 1024.41, Regulation X of RESPA (Count 2); Violation

of 15 U.S.C. 1635(b), Truth in Lending Act ("TILA") (Count 3); and Equitable Accounting (Count 4). (Doc. 23, "Am. Compl."). I will first address Plaintiff's federal claims.

### A. Regulation X of RESPA (Count 2)

In Count 2, Plaintiff allegs that Defendants violated Regulation X of RESPA, 12 C.F.R. 1024.41(g). (Am. Compl. ¶¶ 37-40). Regulation X of RESPA, promulgated by the Consumer Financial Protection Bureau pursuant to section 1022(b) of the Dodd–Frank Act, 12 U.S.C. § 5512(b), and RESPA 12 U.S.C. § 2601 et seq., restricts a loan servicer's right to conduct a foreclosure sale where the borrower, after receiving a first notice or filing required by applicable law for the foreclosure process, submits a complete loss mitigation application at least 37 days before a foreclosure sale. Id. § 1024.41(g).

In the Amended Complaint, Plaintiff alleges that he received a notice of foreclosure on June 19, 2015, noticing a foreclosure sale date of August 4, 2015. (Am. Compl. ¶ 26). Thereafter, Plaintiff alleges that he sent a loss mitigation application to Wells Fargo and that Wells Fargo failed to respond. (Id. ¶¶ 27, 30). Defendants argue that any claim under this section must be dismissed because no foreclosure actually happened. (Doc. 24-1 at 12; Doc. 28 at 5). I agree.

A loan servicer who fails to comply with RESPA and Regulation X faces damages in the form of "any actual damages caused by the failure, and up to $[2],000 in statutory damages if there is a pattern or practice of noncompliance with RESPA." McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010) (unpublished) (citing 12 U.S.C. § 2605(f)). Thus, a plaintiff seeking to recover under RESPA must allege facts relevant to the necessary element of damages to show that that he or she suffered actual damages or is entitled to statutory damages based on "a pattern or practice of noncompliance." Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 836 (11th Cir. 2010) (unpublished). Bare allegations that a defendant violated a plaintiff's rights under Regulation X, without factual support or allegations of actual damages as a result of the alleged violation, are insufficient to state a claim. See Servantes v. Caliber Home Loans, Inc., 2014 WL 6986414, at *1 (E.D. Mich. Dec. 10, 2014) (to successfully plead a violation of RESPA, including § 1024.41, a plaintiff must allege actual damages resulting from the RESPA violation). To survive a rule 12(b)(6) motion to dismiss, the complaint must allege that the plaintiff timely submitted a complete loss mitigation application *and* that the defendant subsequently violated RESPA by conducting a foreclosure sale prior to action on the application. See Dionne v. Fed. Nat'l Mortg. Ass'n, 110 F. Supp. 3d 338, 343-44 (D. N.H. June 16, 2015).

Here, there are no factual allegations of a "pattern or practice of noncompliance," and the foreclosure sale did not happen. Plaintiff does not identify any actual damages that can be linked to the alleged violation of Regulation X (i.e., a foreclosure sale) and alleges only that "[a]s a direct and proximate cause of the (sic) Wells Fargo's violations of § 1024.41(g), the Plaintiff has suffered actual damages." (Am. Compl. ¶ 40). Absent allegations identifying how Wells Fargo's failure to comply with any provision of Regulation X caused Plaintiff to sustain actual damages, the claim fails. See Houle v. Green Tree Serv., LLC, 2015 WL 1867526, at *4 (E.D. Mich. Apr. 23, 2015) (dismissing claims brought under Regulation X where the plaintiff failed to identify any actual damages suffered). Because Plaintiff has failed to allege facts to show actual damages or entitlement to statutory damages based on "a pattern or practice of noncompliance," I **RECOMMEND** that Defendants' motion to dismiss the Regulation X claim (Count 2) be **GRANTED**.[3]

---

[3] The RESPA claim against Freddie Mac fails for the additional reason that Freddie Mac is not alleged to be the servicer of the Loan. (See Am. Compl. ¶¶ 10, 11, 29). Rather, Freddie Mac is alleged to be the owner and holder of the Note and Security Deed. (Id. ¶ 11). While there is no Eleventh Circuit authority on this issue, the language of Regulation X reflects that it is intended to apply only to servicers of loans. See 12 C.F.R. § 1024.41; see also § 1024.35 ("a servicer shall comply with the requirements of this section. . . ."); Bennett v. Nat'l Mortg., LLC, 2015 WL 5294321, at *10-11 (S.D. Al. Sept. 8, 2015) (dismissing Regulation X

**B.     TILA (Count 3)**

TILA was enacted to protect consumers against uninformed use of credit by requiring meaningful disclosure of credit terms and to protect against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. § 1601(a); Jesinoski v. Countrywide Home Loans, Inc., __ U.S. __, 135 S.Ct. 790, 791-92 (2015). Under TILA and its implementing regulations, a consumer in a mortgage loan transaction has the right—for three days after the latter of consummation, delivery of the required notice, or delivery of all material disclosures—to rescind the transaction. See 15 U.S.C. § 1635; 12 C.F.R. § 226.23(a)(3). However, if either the TILA-required Notice of the Right to Cancel, or the TILA-required material disclosures[4] are not delivered, "the right to rescind shall expire three years after

---

claims against a lender who did not service the loan and holding that RESPA and Regulation X apply only to mortgage servicers). While some courts have held that a lender may be held vicariously liable under Regulation X for the acts of its servicer, see Rouleau v. U.S. Bank, N.A., 2015 WL 1757104, at *6–7 (D.N.H. Apr. 17, 2015), I am persuaded by the language of the statue and case law holding that only servicers can be held liable under Regulation X. See Bennett, 2015 WL 5294321, at *10-11; see also McCarley v. KPMG Int'l, 293 F. App'x 719, 722 (11th Cir. 2008) (unpublished) (rejecting argument to hold subsidiary of mortgage servicer liable for alleged RESPA violation, noting that there was no authority assigning liability to parent or subsidiary companies under RESPA).

[4] The material disclosures required by TILA are: "the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)." 12 C.F.R. § 226.23 n. 48.

consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." Id. Plaintiff claims that he is entitled to the benefit of the three-year rescission rule. Defendants argue that (1) Plaintiff is not entitled to the benefit of the three-year rescission rule because the loan was a "residential mortgage transaction" and (2) even if Plaintiff was entitled to the benefit of the three-year rescission rule, the claim still fails because Plaintiff waited more than five years after sending his notice, and the statute of limitations expired.

**1. Was the loan a "residential mortgage transaction"?**

Defendants argue that the TILA claim fails as a matter of law because the three-year right to rescind does not apply to Plaintiff's Loan. (Doc. 24-1 at 13-14). Defendants contend that the Loan was a "residential mortgage transaction," which is defined in the statute as, among other things, a transaction to finance the acquisition or initial construction of a dwelling. 15 U.S.C. § 1602 (x). The statute makes clear that the three-year right to rescind does not apply such "residential mortgage transactions." See 15 U.S.C. § 1635(e)(1); Williams v. Homestake Mortg. Co., 968 F.2d 1137, 1139 n. 5 (11th Cir. 1992) (TILA's rescission provision "applies to those transactions in which the creditor retains a security interest, other than a first mortgage, on the consumer's principal residence");

Infante v. Bank of Am. Corp., 468 F. App'x 918, 921 (11th Cir. 2012) (unpublished) (the TILA-based right to rescission is not available with respect to residential mortgage transactions); Montoya v. Branch Banking & Trust Co., Case No. 1:11-CV-01869-RWS, 2012 WL 826993, at *7 (N.D. Ga. Mar. 9, 2012) (same). Defendants argue that the Loan was used to finance the acquisition of the Property, directing the Court to evidence that the Quitclaim Deed and Security Deed were both filed on the same day. (Doc. 24-1 at 14). Plaintiff, on the other hand, asserts that the Loan was used to *refinance* a mortgage on the Property, and therefore, the Loan was not a "residential mortgage transaction." (Am. Compl. ¶ 9; Doc. 27 at 10).

It is not clear from the Amended Complaint or the exhibits attached to the motion to dismiss how the mortgage proceeds were distributed or for what purpose. Moreover, although the Quitclaim Deed and the Security deed were indeed recorded on the same day, the Quitclaim Deed is dated October 15, 2007, predating the Security Deed (dated November 2, 2007) by more than two weeks. (See Docs. 24-2, 24-3). After broadly construing Plaintiff's allegations and making all inferences in his favor, I find Plaintiff has stated a plausible claim of entitlement to the benefit of the TILA three-year rescission rule.

### 2. Is the TILA claim barred by the statute of limitations?

Defendants next argue that even if the three-year rescission period applied to Plaintiff's Loan, the TILA claim still fails because it is barred by the statute of limitations. Pursuant to Section 1640(e) of TILA, "all TILA claims must be brought 'within one year from the date of the occurrence of the violation.'" Velardo v. Fremont Inv. & Loan, 298 F. App'x 890, 892 (11th Cir. 2008) (unpublished) (citing 15 U.S.C. § 1640(e)). Plaintiff's claim is brought pursuant to 15 U.S.C. § 1635(b). (Am. Compl. ¶¶ 42, 45). That section provides that when a borrower exercises a valid right to rescission, the creditor must take action within twenty days after receipt of the notice of rescission, returning the borrower's money and terminating its security interest. See 15 U.S.C. § 1635(b). The one-year limitations period for violation of § 1635(b) claims runs from twenty days after a plaintiff gives notice of rescission. See Frazile v. EMC Mortgage Corp., 382 F. App'x 833, 839 (11th Cir. 2010).

Plaintiff responds that he is enforcing an already-effective rescission of his mortgage, relying upon Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790 (2015), for the proposition that giving notice alone effects rescission by operation of law. Plaintiff argues that pursuant to the "roadmap" provided by Jesinoski he did not have to file a lawsuit to compel rescission and, instead, the burden is on

Defendants to challenge the rescission. (Doc. 27 at 11-12). Plaintiff also argues that Frazile, which Defendants cite to in support of their statute of limitations argument, is not controlling because it predates the Supreme Court's decision in Jesinoski. (Id. at 12).

Plaintiff's expansive reading of Jesinoski is not supported by the holding of the case and does not change the one-year limitations period for claims brought under § 1635(b), which, as noted in Frazile, begins to run twenty days after a borrower gives notice of rescission. Jesinoski simply clarified that "recission is effected when the borrower notifies the creditor of his intention to rescind." Id. at 792. It did not expand the statute of limitations to bring a claim under § 1635(b). See Bazemore v. U.S. Bank, N.A., Case No. 1:14-CV-3310-AT, 2016 WL 889676, at *2 (N.D. Ga. Mar. 8, 2016) (relying on Frazile to find a TILA claim untimely).[5]

Here, Plaintiff alleges that he sent the Notice on February 22, 2010, and that he never received a response. (Am. Compl. ¶¶ 13, 17, 20). The one-year and twenty-day statute of limitations began running on that date. See Frazile, 382 F. App'x at 837; Jackson v. Bank of America, N.A., Case No. 7:14-CV-82-HL, 2015 WL 5684121, at *3 (M.D. Ga. Sept. 29, 2015). Thus, it is evident that the

---

[5] The district court's decision in Bazemore was issued after Jesinoski and cited to Jesinoski in another portion of the opinion discussing tender under TILA.

limitations period had expired long before Plaintiff initiated this civil action on July 15, 2015. Accordingly, I **RECOMMEND** that Defendants' motion to dismiss Plaintiff's TILA claim (Count 3) be **GRANTED**.

### C.     Declaratory Judgment (Count 1)

"[T]o pursue properly a declaratory judgment under Georgia law 'a party must establish that a declaratory judgment is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests.'" Milani v. One West Bank FSB, 491 F. App'x 977, 979 (11th Cir. 2012) (unpublished) (quoting Porter v. Houghton, 542 S.E.2d 491, 492 (Ga. 2001)). Plaintiff seeks a declaration that the Security Deed was cancelled, as a matter of law, in 2010 when he sent the Notice to Defendants. (Am. Compl. ¶¶ 34-36). Plaintiff argues that due to the threat of foreclosure, there is "a substantial and continuing controversy between Plaintiff and [Defendants] Wells Fargo and Freddie Mac" and seeks judgment to establish that his Notice of Recession was valid and "was effective as of the date Notice was given[.]" (Id. ¶ 35).

A declaratory judgment is unavailable here because "all material rights have accrued based on past events." See Milani, 491 F. App'x at 979. In the Amended Complaint, Plaintiff seeks, in effect, an advisory opinion as to whether, based upon past events, he would prevail on the merits if he filed an action to establish that any

16

future foreclosure was wrongful. A declaratory judgment is not available in such a situation. See Logan Paving Co. v. Peoples Bank & Trust, 395 S.E.2d 287, 288 (Ga. Ct. App. 1990). Moreover, as discussed above, Plaintiff's claims under Regulation X of RESPA and TILA are due to be dismissed. Thus, Plaintiff's Amended Complaint fails to show that there is an actual, active case or controversy that would justify a declaratory judgment. See id. According, I **RECOMMEND** that Defendants' motion to dismiss Plaintiff's request for a declaratory judgment (Count 1) be **GRANTED**.

**D.    Equitable Accounting (Count 4)**

In support of his claim for equitable accounting, Plaintiff alleges that he disagrees with the current "payoff figure" from Wells Fargo and accuses Defendants of keeping "two sets of bookkeeping records," allowing them to "double dip." (Am. Compl. ¶¶ 46-50). Under Georgia law, equitable accounting "is granted only in carefully prescribed and determined circumstances, such as when an accounting at law is inadequate." Herring v. Standard Guar. Ins. Co., 232 S.E.2d 544, 545 (Ga. 1977). Moreover, an accounting is available only where the petitioner will likely be entitled to recover judgment for some amount. Riverview Condominium Ass'n v. Ocwen Fed. Bank, 645 S.E.2d 5, 7 (Ga. Ct. App. 2007). Here, Plaintiff has failed to establish that he lacks a remedy at law. Moreover,

Plaintiff is not likely to recover a judgment because, as discussed above, his claims are due to be dismissed. Accordingly, I **RECOMMEND** that Defendants' motion to dismiss Plaintiff's request for an equitable accounting (Count 4) be **GRANTED**.

## V. CONCLUSION

For the reasons discussed, I **RECOMMEND** that Defendants' Motion to Dismiss (Doc. 24) be **GRANTED.**

**SO REPORTED AND RECOMMENDED**, this 13th day of May, 2016.

_____
Catherine M. Salinas
United States Magistrate Judge